# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __January 29, 2015_____

**NO. 33,484**

**STATE OF NEW MEXICO ex rel. THE HONORABLE SHERYL WILLIAMS STAPLETON, THE HONORABLE HOWIE MORALES, THE HONORABLE LINDA M. LOPEZ, AMERICAN FEDERATION OF TEACHERS-NEW MEXICO, ELLEN BERNSTEIN, and RYAN ROSS,**

Petitioners-Appellants,

v.

**HANNA SKANDERA, Secretary-Designate of the PUBLIC EDUCATION DEPARTMENT OF THE STATE OF NEW MEXICO,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**C. Shannon Bacon, District Judge**

Youtz & Valdez, P.C.
Shane C. Youtz
Stephen Curtice
James A. Montalbano
Albuquerque, NM

for Petitioners-Appellants

Montgomery & Andrews, P.A.
Jeffrey J. Wechsler
Seth C. McMillan
Andrew S. Montgomery
Santa Fe, NM

for Respondent-Appellee

**OPINION**

**BUSTAMANTE, Judge.**

{1}     Petitioners appeal the district court's denial of their petition for a writ of mandamus ordering the Secretary-Designate (the Secretary) of the Public Education Department (the Department) to desist from implementing new regulations governing the evaluation of teachers in public schools.  Like the district court, we conclude that the Secretary acted within the discretion authorized by statute and, therefore, cannot be compelled by a writ of mandamus to suspend the new regulations.  We affirm.

**BACKGROUND**

{2}     In January 2012 the Teacher and School Leader Effectiveness Act (the Act) was introduced in the New Mexico Legislature.  Although it passed in the House of Representatives, ultimately the Legislature failed to pass the Act.  Later that year, the Secretary published regulations governing evaluation of teachers in public schools, which were codified at Title 6, Chapter 69, Part 8 of the New Mexico Administrative Code.  *See* 6.69.8 NMAC (08/30/2012).  We will refer to these regulations collectively as "Part 8."  Part 8 is titled "Teacher and School Leader Effectiveness." *Id.*

{3}     The purpose of Part 8 is stated in the regulations.

> This rule establishes uniform procedures for conducting annual evaluations of licensed school employees, for setting the standards for

each effectiveness level, for measuring and implementing student achievement growth, and for monitoring each school district's implementation of its teacher and school leader effectiveness evaluation system. This rule also seeks to change the dynamic of placing emphasis on teacher effectiveness and provide the opportunity to acknowledge excellence, thereby replacing the binary system that emphasizes years of experience and credentials.

6.69.8.6 NMAC (08/30/2012). Part 8 supersedes the teacher evaluation regulations promulgated in 2003 as 6.69.4 NMAC (09/30/2003, as amended through 06/15/2009). *See* 6.69.8.8 NMAC (09/30/2013). Additional facts are provided in our discussion of Petitioners' arguments.

**DISCUSSION**

**A.    Standard of Review**

{4}    "[M]andamus lies to compel the performance of an affirmative act by another where the duty to perform the act is clearly enjoined by law and where there is no other plain, speedy[,] and adequate remedy in the ordinary course of law." *Lovato v. City of Albuquerque*, 1987-NMSC-086, ¶ 6, 106 N.M. 287, 742 P.2d 499; *see* NMSA 1978, §§ 44-2-4, -5 (1884). "Mandamus is a drastic remedy to be invoked only in extraordinary circumstances." *Brantley Farms v. Carlsbad Irrigation Dist.*, 1998-NMCA-023, ¶ 12, 124 N.M. 698, 954 P.2d 763. Mandamus does not apply "to compel an executive officer acting within his discretion." *State ex rel. King v. Lyons*, 2011-NMSC-004, ¶ 28, 149 N.M. 330, 248 P.3d 878. In other words, "[w]hen the

legal duty in question is based on a statute, mandamus is appropriate only when that duty is clear and indisputable." *Johnson v. Vigil-Giron*, 2006-NMSC-051, ¶ 22, 140 N.M. 667, 146 P.3d 312 (internal quotation marks and citation omitted).

{5} Generally, the grant or denial of a petition for writ of mandamus is reviewed for an abuse of discretion. *FastBucks of Roswell, N.M., LLC v. King*, 2013-NMCA-008, ¶ 7, 294 P.3d 1287. Within the abuse of discretion standard we consider whether the district court's ruling rested on its determination that the Secretary acted within her statutory authority and exercised her discretion under statute, the issue presented requires the interpretation of statutes. Thus, our review is de novo. *Id.* ¶ 6; *OS Farms, Inc. v. N.M. Am. Water Co.*, 2009-NMCA-113, ¶ 19, 147 N.M. 221, 218 P.3d 1269. The scope of our review is limited to whether the Secretary's actions fall within her authority; we do not examine the prudence of the regulations themselves. *See Am. Fed'n of State, Cnty. & Mun. Emps. v. Martinez*, 2011-NMSC-018, ¶ 4, 150 N.M. 132, 257 P.3d 952 ("In considering whether to issue a prohibitory mandamus, we do not assess the wisdom of the public official's act[.]").

{6} Petitioners make two broad arguments. First, they argue that the Secretary "[o]verstepped" the authority granted her by statute and "[u]surp[ed]" the authority of the Legislature to set public policy. Second, they maintain that two provisions in Part 8 expressly violate the Public School Code. NMSA 1978, §§ 22-1-1 to 22-33-4

3

(except Article 5A) (1967, as amended through 2014). We address these arguments in turn.

**B.     The Secretary Did Not Exceed Her Authority**

{7}     Petitioners maintain that Part 8 constitutes a "radical[] alter[ation of the] teacher evaluation standards" found in the Department's governing statutes. More specifically, Petitioners object to the inclusion of student performance as a measure of teacher competency and to the replacement of the "binary system" of evaluation (competent or incompetent) with one in which teachers are assessed according to five levels of competency (exemplary, highly effective, effective, minimally effective, and ineffective). 6.69.8.8(D)(6) NMAC. They maintain that these aspects of the regulations constitute a "fundamental shift in public policy" and therefore usurp the Legislature's policy-making function. We disagree that the Secretary has acted outside of her statutorily defined authority.

{8}     "Agencies are created by statute, and limited to the power and authority expressly granted or necessarily implied by those statutes." *Qwest Corp. v. N.M. Pub. Regulation Comm'n*, 2006-NMSC-042, ¶ 20, 140 N.M. 440, 143 P.3d 478. "Generally, the Legislature, not the administrative agency, declares the policy and establishes primary standards to which the agency must conform." *State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶ 22, 125 N.M. 343, 961 P.2d 768. Through

4

enabling statutes, the Legislature may "delegate both adjudicative and rule-making power to administrative agencies." *New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 14, 149 N.M. 42, 243 P.3d 746. Thus, although courts have recognized the primacy of the Legislature's role, our Supreme Court "has acknowledged that elected executive officials and executive agencies also make policy, to a lesser extent, as authorized by the constitution or the [L]egislature[.]" *State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶ 12, 127 N.M. 272, 980 P.2d 55 (alteration, internal quotation marks, and citation omitted). However, "[t]he administrative agency's discretion may not justify altering, modifying[,] or extending the reach of a law created by the Legislature." *Taylor*, 1998-NMSC-015, ¶ 22.

{9}    When reviewing agency action, we presume that "[r]ules and regulations enacted by an agency are . . . valid" and we will uphold them if they are "reasonably consistent with the statutes that they implement." *Tenneco Oil Co. v. N.M. Water Quality Control Comm'n*, 1987-NMCA-153, ¶ 14, 107 N.M. 469, 760 P.2d 161, *superseded by statute as stated in N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, 141 N.M. 41, 150 P.3d 991. Given this presumption, Petitioners bear the burden "of establishing the invalidity of [Part 8]." *N.M. Mining Ass'n v. N.M. Mining Comm'n*, 1996-NMCA-098, ¶ 8, 122 N.M. 332, 924 P.2d 741.

{10} The Secretary's duties and authority are addressed by several different statutes. The Public Education Department Act provides that "[t]he secretary may make and adopt such reasonable and procedural rules as may be necessary to carry out the duties of the [D]epartment and its divisions." NMSA 1978, § 9-24-8(D) (2004). The Public School Code also contains several provisions addressing the authority of the Secretary and the Department. Section 22-2-1 states that "[t]he [S]ecretary is the governing authority and shall have control, management and direction of all public schools, except as otherwise provided by law" and that "[t]he [D]epartment may . . . adopt, promulgate[,] and enforce rules to exercise its authority and the authority of the [S]ecretary[.]" Section 22-2-2(B) and (C) state that "[t]he [D]epartment shall . . . determine policy for the operation of all public schools and vocational education programs in the state, . . . [and] supervise all schools and school officials coming under its jurisdiction[.]" In addition, Section 22-10A-19(A) requires the Department to "adopt criteria and minimum highly objective uniform statewide standards of evaluation for the annual performance evaluation of licensed school employees." Through these provisions, the Legislature has delegated broad authority to the Secretary to define how teachers will be evaluated, so long as evaluations are "highly objective" and "uniform statewide." *Id.* Thus, unless the Secretary has abused her discretion, mandamus is improper. *See Brantley Farms*, 1998-NMCA-

6

023, ¶ 22 ("[T]he exercise of discretionary power or the performance of a discretionary duty cannot be controlled by mandamus.").

{11} Petitioners argue that inclusion of student achievement as a performance measure for teachers represents a shift in public policy that can only be made by the Legislature. They appear to contend that the 2003 evaluation regulations, which focused on teachers' "skills, training[,] and knowledge" and did not include the assessment of student achievement to the same degree as the new regulations, properly implemented the Legislature's intent. *See, e.g.*, 6.69.4.10 NMAC (providing for implementation of a high objective uniform standard of evaluation); 6.69.4.9(D)(4)(b) NMAC (discussing student achievement as a measure of a teacher's competency); 6.69.4.11(E)(1)(a) NMAC (same).

{12} But there is nothing in the Legislature's directive that teacher evaluations should be "highly objective" and "uniform statewide" that addresses exactly how teacher effectiveness should be measured. Indeed, even the 2003 regulations, with which Petitioners agree, were based on the Department's discretionary selection of assessment criteria. We conclude that the statute leaves the particulars of a teacher evaluation program to the Secretary.

{13} A similar analysis applies to Petitioners' argument that the Secretary fundamentally altered the public policy of the state by "replacing the binary system"

7

of teacher evaluation with a more nuanced system. The statute requires only that the teacher evaluation program be objective and uniform. *See* § 22-10A-19(A). As long as these broad criteria are met, it is within the Secretary's discretion to devise a structure for evaluations as she sees fit.

{14} Finally, to the extent that Petitioners argue that Part 8 is invalid because it was promulgated only after the Legislature failed to pass a bill mandating its provisions, we are unpersuaded. Petitioners argue that the present matter is "virtually indistinguishable" from the facts in *Taylor*, in which an administrative agency implemented regulations after a bill to the same effect failed to pass in the Legislature. 1998-NMSC-015, ¶ 10. On appeal, the Court invalidated the regulations. *Id.* ¶ 25. Its reasoning, however, was based on its determination that the regulations "implement[ed] the type of substantive policy changes reserved to the Legislature[,]" and therefore were beyond the agency's authority, not on the fact that the Legislature had rejected similar legislation. *Id.* Similarly, the failure of the Legislature to pass the Teacher and School Leader Effectiveness Act has no bearing on our analysis of whether the Secretary's actions were within her discretion under the current statutes. *See id.* Since we have concluded that the Secretary did not exceed her authority, *Taylor* does not support Petitioners' position.

## C.     Part 8 Does Not Violate the Public School Code

{15}     In their second major argument, Petitioners contend that two provisions in Part 8 are in direct violation of the Public School Code.  They argue that whereas the statute requires principals to observe each teacher in the classroom, Part 8 permits assistant principals to observe teachers.  Similarly, they argue that whereas the statute requires that any evaluation system be "uniform statewide," Part 8 exempts charter schools from its regulations.  These arguments are unavailing.

{16}     Petitioners first contend that 6.69.8.8(H) NMAC conflicts with Section 22-10A-19(C).  The former states that "[s]chool leaders shall observe instructional practice of teachers using common research-based observational protocol approved by the [D]epartment that correlates observations to improved student achievement." 6.69.8.8(H) NMAC.  The term "school leader[s]" includes both principals and assistant principals.  6.69.8.7(N) NMAC.  Section 22-10A-19(C) states, "[a]s part of the highly objective uniform statewide standard of evaluation for teachers, the school principal shall observe each teacher's classroom practice to determine the teacher's ability to demonstrate state-adopted competencies."  We agree with the district court that the regulation does not necessarily conflict with the statute because the statute "mandates the participation of school principals [but] does not limit the persons who *may* [also] observe [teachers]."  (Emphasis added.)  Neither does the fact that

9

6.69.8.8(H) NMAC allows either principals or assistant principals to observe teachers in classrooms relieve principals of their duty to do so under the statute. Even if we acknowledge that, as Petitioners argue, the regulation may be applied in such a way as to conflict with the statute, Petitioners provide no evidence that the Secretary has interpreted the regulation that way. "If the [Department] may interpret the regulation in a manner that is in compliance with the [Public School Code], we must affirm the regulation, leaving to a future time any challenge to the regulation as applied." *Old Abe Co. v. N.M. Mining Comm'n*, 1995-NMCA-134, ¶ 22, 121 N.M. 83, 908 P.2d 776. "Meanwhile, for purposes of this appeal, we will presume that the rule will not be interpreted in a manner contrary to the [Public School Code]." *Id.*

{17} Next, Petitioners argue that, because charter schools are exempt from Part 8, the evaluation program does not comply with the statute's requirement that any evaluation program be uniformly applied to all schools. *See* 6.69.8.7(L) NMAC (defining "[s]chool district" and stating that "[d]istrict-authorized charter schools are excluded from being considered a school district for purposes of this rule"); § 22-10A-19(A) ("The department shall adopt . . . uniform statewide standards of evaluation for the annual performance evaluation of licensed school employees."). But the Legislature expressly exempted charter schools from the Public School Code's provisions related to teacher evaluations. Section 22-8B-5(C), which is part

10

of the Charter Schools Act within the Public School Code, requires the Department to "waive requirements or rules and provisions of the Public School Code . . . pertaining to . . . evaluation standards for school personnel[.]" Thus Part 8's provision exempting charter schools does not contravene the uniformity requirement in the Public School Code.

{18} Petitioners make a cursory argument that the requirement in Section 22-10A-19(A) that evaluation programs be uniform throughout the state "could be seen as taking precedence [over the exemption in the Charter Schools Act]." They do not cite to any authority in support of this proposition. In addition, Petitioners do not state how this specific argument was preserved, we do not find it in the pleadings, and the district court did not address it in its order. We therefore do not address this argument because it was not preserved below and is undeveloped on appeal. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue."); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to review an undeveloped argument).

# CONCLUSION

{19}     Having concluded that the Secretary's promulgation of Part 8 was within the discretionary authority granted her by statute, we affirm the district court's denial of Petitioners' petition for a writ of mandamus.

{19}     **IT IS SO ORDERED.**


_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**

_____
**RODERICK T. KENNEDY, Judge**